UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| WITCHES BREW TOURS LLC, | § | Case No. |
| Plaintiff, | § | (Antitrust) |
| | § | |
| v. | § | COMPLAINT FOR |
| | § | INJUNCTIVE RELIEF |
| NEW ORLEANS ARCHDIOCESAN | § | |
| CEMETERIES d.b.a. NEW ORLEANS | § | |
| CATHOLIC CEMETERIES and | § | |
| CEMETERY TOURS NOLA, LLC, | § | |
| Defendants. | § | |

I. PARTIES

1.     Plaintiff, Witches Brew Tours LLC ("WBT"), is a limited liability company organized under the laws of the State of Louisiana. WBT may be served through undersigned counsel. WBT has provided tours in New Orleans since 2012, and cemetery tours make up approximately 30% of its business.

2.     Defendant, New Orleans Archdiocesan Cemeteries d.b.a. New Orleans Catholic Cemeteries ("NOCC"), is a religious nonprofit corporation incorporated under the laws of the State of Louisiana. NOCC may be served with process on its registered agent for service, Jeffrey J. Entwisle, at 7887 Walmsley Ave., New Orleans, LA 70125. Undersigned counsel has confirmed with NOCC, through its General Counsel, that NOCC is not a party to or affected by the ongoing Chapter 11 bankruptcy of other entities of the Archdiocese of New Orleans.

3.     Defendant, Cemetery Tours NOLA LLC ("CTN"), is a limited liability company organized under the laws of the State of Louisiana. CTN may be served with process on its registered agent for service, Michael Valentino, at 1501 Lafitte Ave., New Orleans, LA 70112.

## II. JURISDICTION, VENUE, AND COMMERCE

4.     This is an action under Sections 1 and 2 of the Sherman Act and Clayton Act, as well as La. R.S. §51:121 *et seq.* and relevant state cemetery law, to restrain anticompetitive conduct by defendants within the New Orleans cemetery tour industry. This industry focuses almost exclusively on St. Louis Cemetery Nos. 1 and 2 ("No. 1" and "No. 2," collectively "Nos. 1 and 2") and generates millions of dollars of tourism income each year for hundreds of directly and indirectly participating individuals and businesses from local, national, and international tourists. WBT stands to lose hundreds of thousands of dollars in revenue each year directly due to the recently announced business plan of defendants.

5.     The court has original jurisdiction over the lawsuit pursuant to 15 U.S.C. §§4, 15, 25 and 28 U.S.C. §§1331, 1337. All defendants are participants in the New Orleans cemetery tourism industry and have conspired to exclude all other competitors, including WBT, from providing tours in Nos. 1 and 2. No. 1 is the oldest cemetery in New Orleans and one of the ten oldest in the nation still in operation and receives approximately 500,000 visitors in a year. Nos. 1 and 2 receive most of the cemetery tourism in New Orleans because of their long histories, proximity to the French Quarter, and the many famous people interred there.

6.     The court has supplemental jurisdiction under 28 U.S.C. §1367 as well as La. C.C.P. Art. 1871 *et seq.*, La. Const. Art. 5, § 16(A), and La. R.S. §51:129 over defendants' anticompetitive conduct and NOCC's breach of its obligations as a cemetery authority because these state law claims substantially mirror the federal law claims within the court's original jurisdiction and form part of the same case or controversy under Article 3 of the U.S. Constitution.

7.     In 2015, NOCC decided to end centuries of practice and tradition by violating its legal

obligation to provide free public access to St. Louis Cemetery No. 1. This action marked NOCC's entry into the tourism industry by creating the revenue stream that NOCC and CTN now conspire to increase through fixed prices and direct exclusively to CTN and NOCC.

8.     Venue is proper in this district under 15 U.S.C. §22; 28 U.S.C. §1391(b)(1) and (2); La. C.C.P. Arts. 2, 42 *et seq*., and 1871 *et seq.*; La. R.S. §51:131; and La. Const. Art. 5, § 16(A). All defendants reside in New Orleans, and a substantial part of the events or omissions giving rise to this claim occurred in New Orleans.

FIRST CLAIM FOR RELIEF

15 U.S.C. §1 *et seq.*

9.     Price fixing can take many forms, and any agreement that restricts price competition violates the law. Price fixing schemes are *per se* violations of the Sherman Act.

10.    NOCC has schemed to enter into the tourism industry by breaking state law and over 200 years of practice and tradition to close No. 1 to the general public in 2015. More recently, NOCC closed Nos. 1 and 2 to all but immediate family due to the pandemic but has since failed to reopen them. Upon information and belief, defendants intend to reopen No. 1 but keep No. 2 closed in order to maximize tourism at No. 1 for defendants, with all other cemetery tour guides and companies excluded.

11.    Over the past six years, NOCC has allowed the public to become accustomed to a) being deprived of its right to visit historic, public cemeteries and b) the idea of paying an entry fee and a mandatory tour fee. But at least those fees were subject to competition at the consumer level with approximately 40 separate companies having agreed to NOCC's fees, which were

always dictated by NOCC without any competition.

12. Upon information and belief, now defendants, both relatively recent entrants into the cemetery tourism industry, have schemed to exclude all competition to allow them to charge a higher fixed entry fees and a higher fixed mandatory tour fee to access a cemetery that a) has been open to the public since it was established in 1789, b) is located on the edge of the current French Quarter, and c) receives up to 90% of the cemetery tourism business in New Orleans and 500,000 tourism related visitors each year.

13. Defendants' scheme will unfairly and unreasonably restrain trade by fixing the prices of mandatory fees to enter and tour a cemetery where entry must by state law be free and was free for over 200 years. Consumers will have no benefit from competition or selection regarding the topics and path of the tour.

14. Collusive agreements are usually reached in secret, with only the participants having knowledge of the scheme. Defendants do not appear to have colluded; their intentions have been relatively open to the industry. It seems likely that defendants have stumbled onto their illegal path. Nevertheless, their scheme is contrary to federal law.

## SECOND CLAIM FOR RELIEF

15 U.S.C. §2 *et seq.*

15. Market allocation schemes are agreements in which competitors divide markets among themselves.

16. In 2015, NOCC saw a tourism business opportunity to leverage the popularity of its

publicly accessible centuries old cemetery on multiple national registries into a new revenue source. That same year, multiple national media outlets ran stories about the only other cemetery in the Western World to charge an entry fee, Highgate Cemetery in London, where Karl Marx and many other notable personages are interred. In 2020, Highgate Cemetery had 100,000 paying visitors, up from 63,000 in 2013. See articles regarding Highgate Cemetery attached hereto and incorporated herein for all purposes as Ex. XXX.

17.     NOCC chose to break state law and over 200 years of tradition by closing the centuries old No. 1 to the general public in 2015, presumably because No. 1 receives up to 90% of the cemetery tour tourism and up to 500,000 visitors each year.

18.     NOCC and CTN have agreed for NOCC to exclude all competitors but CTN from No. 1 in exchange for a larger portion of revenue (from the fixed prices) as well as final approval of all topics and discussion during and the path of the tours.

19.     Defendants' scheme will unfairly and unreasonably monopolize trade by excluding all industry participants, other than defendants, from approximately 90% of the cemetery tour revenue in New Orleans.

20.     Collusive agreements are usually reached in secret, with only the participants having knowledge of the scheme. Defendants do not appear to have colluded; their intentions have been relatively open to the industry. It seems likely that defendants have stumbled onto their illegal path. Nevertheless, their scheme is contrary to federal law.

THIRD CLAIM FOR RELIEF

La. R.S. §51:122

21.     Restraint of trade is prohibited by La. R.S. §51:122, which provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in this state is illegal."

22.     NOCC has schemed to enter into the tourism industry by breaking state law and over 200 years of tradition to close No. 1 to the general public in 2015.

23.     Over the past six years, NOCC has allowed the public to become accustomed to the idea of paying an entry fee and a mandatory tour fee.

24.     Now defendants, both relatively recent entrants into the cemetery tourism industry, have schemed to exclude all competition to allow them to charge a fixed entry fees and a fixed mandatory tour fee to access a cemetery that a) has been open to the public since it was established in 1789, b) is located on the edge of the current French Quarter, and c) receives up to 90% of the cemetery tourism business in New Orleans and 500,000 tourism related visitors each year.

25.     Defendants' scheme will unfairly and unreasonably monopolize trade by excluding all industry participants, other than defendants, from approximately 90% of the cemetery tour revenue in New Orleans

26.     Collusive agreements are usually reached in secret, with only the participants having knowledge of the scheme. Defendants do not appear to have colluded; their intentions have been

relatively open to the industry. It seems likely that defendants have stumbled onto their illegal path. Nevertheless, their scheme is contrary to state law.

## FOURTH CLAIM FOR RELIEF

### La. R.S. §51:123

27. Monopolizing trade is prohibited by La. R.S. §51:123, which provides that "[n]o person shall monopolize, or attempt to monopolize, or combine, or conspire with any other person to monopolize any part of the trade or commerce within this state."

28. In 2015, NOCC saw a tourism business opportunity to leverage the popularity of its publicly accessible centuries old cemetery on multiple national registries into a new revenue source. That same year, multiple national media outlets ran stories about the only other cemetery in the Western World to charge an entry fee, Highgate Cemetery in London, where Karl Marx and many other notable personages are interred. In 2020, Highgate Cemetery had 100,000 paying visitors, up from 63,000 in 2013. See articles regarding Highgate Cemetery attached hereto and incorporated herein for all purposes as Ex. XXX.

29. NOCC chose to break state law and over 200 years of tradition by closing the centuries old No. 1 to the general public in 2015, presumably because No. 1 receives up to 90% of the cemetery tour tourism and up to 500,000 visitors each year.

30. NOCC and CTN have agreed for NOCC to exclude all competitors but CTN from No. 1 in exchange for a larger portion of revenue (from the fixed prices) as well as final approval of all topics and discussion during and the path of the tours.

31.     Defendants' scheme will unfairly and unreasonably monopolize trade by excluding all industry participants, other than defendants, from approximately 90% of the cemetery tour revenue in New Orleans

32.     Collusive agreements are usually reached in secret, with only the participants having knowledge of the scheme. Defendants do not appear to have colluded; their intentions have been relatively open to the industry. It seems likely that defendants have stumbled onto their illegal path. Nevertheless, their scheme is contrary to state law.

### FIFTH CLAIM FOR RELIEF

Unlawful Exclusion of Extended Relative and Friends from Dedicated Religious Cemetery

33.     NOCC is a cemetery authority licensed to use Nos. 1 and 2 exclusively for cemetery business, and none other.

34.     NOCC saw a tourism business opportunity to leverage the popularity of its publicly accessible and centuries old cemetery No.1 listed on multiple national registries into a new revenue source by entering into the cemetery tourism industry. No. 1 receives up to 90% of the cemetery tour tourism business in New Orleans and up to 500,000 visitors each year.

35.     In 2015, NOCC chose to break state law and over 200 years of tradition by closing No. 1 to same public that had utilized its right to free access for hundreds of years.

36.     Since 2020, NOCC has closed No. 2 to anyone but immediate family. This ongoing closure will cause the neighboring No. 1 to receive up to 90% of the cemetery tour business in New Orleans.

## REQUEST FOR TEMPORARY RESTRAINING ORDER

37.     WBT asks the court to, after considering the complaint and motion, to issue a temporary restraining order against NOCC.

## REQUEST FOR PRELIMINARY INJUNCTION

38.     WBT asks the court to set their application for preliminary injunction for hearing at the earliest possible time and, after hearing the request, to issue a preliminary injunction against NOCC.

## REQUEST FOR PERMANENT INJUNCTION

39.     WBT asks the court to set its application for injunctive relief for a full trial on the issues in this application and, after the trial, to issue a permanent injunction against NOCC.

## PRAYER FOR RELIEF

Wherefore,  WBT respectfully requests the following relief:

40.     An order declaring that the defendants schemed to fix prices and establish a monopoly in violation of 15 U.S.C. §1 *et seq*. and La. R.S. §51:122 and 123;

41.     An order declaring that the defendants is in breach of its obligation to provide free and reasonable access to St. Louis Cemeteries Nos. 1 and 2;

42.     An order preliminarily and then permanently enjoining defendants and their owners, members, officers, agents, affiliates, subsidiaries, servants, employees, contractors, and all other persons or entities in active concert or privity or participation with them, from taking retaliatory

action against WBT and their owners, owners, members, officers, agents, affiliates, subsidiaries, servants, employees, and contractors for bringing this lawsuit;

43. An order directing defendants to take affirmative steps necessary to remediate their past restraints to commerce and to once again allow the public free and reasonable access to the cemeteries owned by NOCC;

44. An award to WBT of reasonable attorneys' fees and costs incurred in connection with this action from defendants;

45. Retain jurisdiction of this matter to enforce the terms of the Court's orders; and

46. An order granting such further and different relief as this Court may deem just and proper or that is necessary to make WBT whole.

Dated: November 5, 2021                DAVID W. NANCE LAW FIRM LLC

                                       /s/ David W. Nance
                                   By: _____

                                       David W. Nance (La. Bar #25467)
                                       DAVID W. NANCE LAW FIRM, LLC
                                       3912 Constance Street
                                       New Orleans, Louisiana 70115
                                       (504) 450-3938 direct
                                       (504) 355-1669 fax
                                       david@dwnlaw.com

                                       COUNSEL FOR PLAINTIFF