UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| NEW ORLEANS ASSOCIATION of CEMETERY TOUR GUIDES and COMPANIES<br>Plaintiff,<br><br>v.<br><br>NEW ORLEANS ARCHDIOCESAN CEMETERIES d.b.a. NEW ORLEANS CATHOLIC CEMETERIES and CEMETERY TOURS NOLA LLC,<br>Defendants. | § § § § § § § § § § § § § | Case No. 2:21-cv-02051-BWA-MBN<br>(Antitrust)<br><br><br>FIRST AMENDED COMPLAINT<br>FOR INJUNCTIVE RELIEF |

I. PARTIES

1. Plaintiff, Association of Cemetery Tour Guides and Companies L3C d.b.a. New Orleans Association of Cemetery Tour Guides and Companies ("ACTGC"), is a low-profit limited liability company organized under the laws of the State of Louisiana. ACTGC may be served through undersigned counsel. ACTGC has a website at www.actgc.org and was organized in 2021. ACTGC has standing to bring this action on behalf of its members because (1) ACTGC's members would otherwise have standing to sue in their own right because they are all in the New Orleans cemetery tour industry; (2) the interests ACTGC seeks to protect are germane to the organization's purpose, specifically educating about the law of, defending the public's rights regarding, and maintenance of public cemeteries, such as St. Louis Cemetery No. 1; and (3) neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of the individual members because they all seek the same relief and do not seek damages. Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 342-343 (1977); Warth v. Seldin, 422 U.S. 490, pp. 498-518 (1975).

2.      Defendant, New Orleans Archdiocesan Cemeteries d.b.a. New Orleans Catholic Cemeteries ("NOAC"), is a religious nonprofit corporation incorporated under the laws of the State of Louisiana. NOAC may be served with process on its registered agent for service, Jeffrey J. Entwisle, at 7887 Walmsley Ave., New Orleans, LA 70125. Undersigned counsel has confirmed with NOAC, through its General Counsel, that NOAC is not a party to or affected by the ongoing Chapter 11 bankruptcy of other entities of the Archdiocese of New Orleans.

3.      Defendant, Cemetery Tours NOLA LLC ("CTN"), is a limited liability company organized under the laws of the State of Louisiana. CTN may be served with process on its registered agent for service, Michael Valentino, at 1501 Lafitte Ave., New Orleans, LA 70112.

## II. JURISDICTION, VENUE, AND COMMERCE

4.      This is an action under Sections 1 and 2 of the Sherman Act and Clayton Act, as well as La. R.S. §51:121 *et seq*. and relevant state cemetery law, to restrain anticompetitive conduct by defendants within the New Orleans cemetery tour industry. This industry focuses almost exclusively on St. Louis Cemetery Nos. 1 and 2 ("No. 1" and "No. 2," collectively "Nos. 1 and 2") and generates millions of dollars of tourism income each year for hundreds of directly and indirectly participating individuals and businesses from local, national, and international tourists. ACTGC members stand to be excluded from visiting and providing their services in the public cemeteries Nos. 1 & 2 due to the recently announced business plan of defendants.

5.      The court has original jurisdiction over the lawsuit pursuant to 15 U.S.C. §§4, 15, 25 and 28 U.S.C. §§1331, 1337. All defendants are participants in the New Orleans cemetery tourism industry and have conspired to exclude all other competitors, ACTGC members, from providing tours in Nos. 1 and 2. No. 1 is by far the most popular cemetery in New Orleans for locals and

tourists, in part because it is the oldest cemetery in New Orleans and one of the ten oldest in the nation still in operation and receives approximately 500,000 visitors in a year. Nos. 1 and 2 receive most of the cemetery tourism in New Orleans because of their long histories, proximity to the French Quarter, and the many famous people interred there.

6.    The court has supplemental jurisdiction under 28 U.S.C. §1367 as well as La. C.C.P. Art. 1871 *et seq.*, La. Const. Art. 5, § 16(A), and La. R.S. §51:129 over defendants' anticompetitive conduct and NOAC's breach of its obligations as a cemetery authority of a public cemetery—i.e., NOAC has unreasonably closed the public cemeteries Nos. 1 & 2 and seeks to fix prices for entry and mandatory tours provided only by CTN—because these state law claims substantially mirror the federal law claims within the court's original jurisdiction and form part of the same case or controversy under Article 3 of the U.S. Constitution.

7.    In 2015, NOAC decided to end centuries of practice and tradition by violating its legal obligation to provide free public access to the public cemeteries St. Louis Cemetery No. 1. NOAC began requiring and sharing in the revenue from mandatory entry and tour fees. This action marked NOAC's entry into the tourism industry by creating the revenue stream that NOAC and CTN now conspire to increase through fixed prices and direct exclusively to CTN and NOAC. Most recently, NOAC has unreasonably kept Nos. 1 & 2 closed and planned to reopen only No. 1, thereby driving most of the cemetery tourism in the city to Nos. 1.

8.    Venue is proper in this district under 15 U.S.C. §22; 28 U.S.C. §1391(b)(1) and (2); La. C.C.P. Arts. 2, 42 *et seq.*, and 1871 *et seq.*; La. R.S. §51:131; and La. Const. Art. 5, § 16(A). All defendants reside in New Orleans, and a substantial part of the events or omissions giving rise to this claim occurred in New Orleans.

FIRST CLAIM FOR RELIEF

15 U.S.C. §1 *et seq.*

9. Price fixing can take many forms, and any agreement that restricts price competition violates the law. Price fixing schemes are *per se* violations of the Sherman Act.

10. NOAC has schemed to enter into the tourism industry by breaking state law and over 200 years of practice and tradition to close the public cemetery No. 1 to the general public in 2015. More recently, NOAC closed the public cemeteries Nos. 1 and 2 to all but immediate family due to the pandemic but has since failed to reopen them. Upon information and belief, defendants intend to reopen No. 1 but keep No. 2 closed in order to maximize tourism at No. 1 for defendants, with all other cemetery tour guides and companies excluded.

11. Over the past six years, NOAC has allowed the public to become accustomed to (a) being deprived of its right to visit historic, public cemeteries and (b) the idea of paying an entry fee and a mandatory tour fee. But at least those fees were subject to competition at the consumer level with approximately 40 separate companies having agreed to NOAC's fees, which were always dictated by NOAC without any competition.

12. Upon information and belief, now defendants, both relatively recent entrants into the cemetery tourism industry, have schemed to exclude all competition to allow them to charge a higher fixed entry fees and a higher fixed mandatory tour fee to access a public cemetery that (a) has always been open to the public since it was established in 1789, (b) is located on the edge of the current French Quarter, and (c) receives up to 90% of the cemetery tourism business in New Orleans and up to 500,000 tourism related visitors each year.

13.     Defendants' scheme will unfairly and unreasonably restrain trade by fixing the prices of mandatory fees to enter and tour a 200-years-old, public cemetery to which entry must, by state law, be free and reasonable. Consumers will have no benefit from competition or selection regarding the topics and path of the tour.

14.     Collusive agreements are usually reached in secret, with only the participants having knowledge of the scheme. Defendants do not appear to have colluded; their intentions have been relatively open to the industry. It seems likely that defendants have stumbled onto their illegal path. Nevertheless, their scheme is contrary to federal law.

## SECOND CLAIM FOR RELIEF

15 U.S.C. §2 *et seq.*

15.     Market allocation schemes are agreements in which competitors divide markets among themselves.

16.     In 2015, despite being a religious nonprofit, NOAC saw a tourism business opportunity as a new revenue source by leveraging the popularity of its centuries old public cemetery listed on multiple national registries. All NOAC had to do was seize a public cemetery and turn it into a private tourist attraction.

17.     NOAC chose to break state law and over 200 years of tradition by closing the centuries old public cemetery No. 1 to the general public in 2015, presumably because No. 1 receives up to 90% of the cemetery tour tourism and up to 500,000 visitors each year.

18.     NOAC and CTN have agreed for NOAC to exclude all competitors but CTN from the

public cemetery No. 1 in exchange for a larger portion of revenue (from the fixed prices) as well as final approval of all topics and discussion during and the path of the tours.

19.     Defendants' scheme will unfairly and unreasonably monopolize trade by excluding all other industry participants from up to 90% of the cemetery tour revenue in New Orleans.

20.     Collusive agreements are usually reached in secret, with only the participants having knowledge of the scheme. Defendants do not appear to have colluded; their intentions have been relatively open to the industry. It seems likely that defendants have stumbled onto their illegal path. Nevertheless, their scheme is contrary to federal law.

THIRD CLAIM FOR RELIEF

La. R.S. §51:122

21.     Restraint of trade is prohibited by La. R.S. §51:122, which provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in this state is illegal."

22.     NOAC has schemed to enter into the tourism industry by breaking state law and over 200 years of tradition to close the public cemetery No. 1 to the general public in 2015 and start collecting mandatory entry and a portion of mandatory tour fees.

23.     Over the past six years, NOAC has allowed the public to become accustomed to the idea of paying an entry fee and a mandatory tour fee.

24.     Now defendants, both relatively recent entrants into the cemetery tourism industry, have schemed to exclude all their competition from the public cemeteries Nos. 1 & 2 and charge a

fixed entry fees and a fixed mandatory tour fee to access a public cemetery that (a) has always been open to the public since it was established in 1789, (b) is located on the edge of the current French Quarter, and (c) receives up to 90% of the cemetery tourism business in New Orleans and up to 500,000 tourism related visitors each year.

25. Defendants' scheme will unfairly and unreasonably monopolize trade by excluding all industry participants, other than defendants, from approximately 90% of the cemetery tour revenue in New Orleans

26. Collusive agreements are usually reached in secret, with only the participants having knowledge of the scheme. Defendants do not appear to have colluded; their intentions have been relatively open to the industry. It seems likely that defendants have stumbled onto their illegal path. Nevertheless, their scheme is contrary to state law.

## FOURTH CLAIM FOR RELIEF

<u>La. R.S. §51:123</u>

27. Monopolizing trade is prohibited by La. R.S. §51:123, which provides that "[n]o person shall monopolize, or attempt to monopolize, or combine, or conspire with any other person to monopolize any part of the trade or commerce within this state."

28. In 2015, NOAC saw a money-making, tourism-business opportunity to leverage the popularity of its publicly accessible centuries old public cemetery listed on multiple national registries.

29. NOAC chose to break state law and over 200 years of tradition by closing the centuries

old public cemetery No. 1 to the general public in 2015, presumably because No. 1 receives up to 90% of the cemetery tour tourism and up to 500,000 visitors each year.

30.     NOAC and CTN have agreed for NOAC to exclude all competitors but CTN from No. 1 in exchange for a larger portion of revenue (from the fixed prices) as well as final approval of all topics and discussion during and the path of the tours.

31.     Defendants' scheme will unfairly and unreasonably monopolize trade by excluding all other industry participants from approximately 90% of the cemetery tour revenue in New Orleans

32.     Collusive agreements are usually reached in secret, with only the participants having knowledge of the scheme. Defendants do not appear to have colluded; their intentions have been relatively open to the industry. It seems likely that defendants have stumbled onto their illegal path. Nevertheless, their scheme is contrary to state law.

## FIFTH CLAIM FOR RELIEF

### Unlawful Exclusion of the General Public from Public Religious Cemeteries

33.     Nos. 1 & 2 are <u>religious cemeteries</u>, which are expressly excluded from the definition of a <u>privately owned cemetery</u>, and NOAC is a <u>cemetery authority</u> licensed to use Nos. 1 and 2 exclusively for <u>cemetery business</u>, and none other. La. R.S. §8:1(7)(9)(10)(36) and (37).

34.     NOAC saw a money-making, tourism-business opportunity to leverage the popularity of its centuries old public cemetery No.1, which is listed on multiple national registries into a new revenue source by entering into the cemetery tourism industry. All NOAC had to do was seize

the public cemeteries Nos. 1 & 2; treat them like privately owned cemeteries, and only reopen No.1, which receives up to 90% of the cemetery tour tourism business in New Orleans and up to 500,000 visitors each year; and charge mandatory, fixed fees for entry and tour, to be provided only by CTN.

35. In 2015, NOAC chose to break state law and over 200 years of tradition by closing the public cemetery No. 1.

36. Since 2020, NOAC has closed Nos. 1 & 2 to anyone but immediate family. This ongoing closure will cause the neighboring No. 1 to receive up to 90% of the cemetery tour business in New Orleans, once No. 1 reopens to private tours only.

37. NOAC has alleged since 2015 that it seized No. 1 from the public to stop vandalism, but upon information and belief vandalism has continued to occur because it occurs at night, when No.1 is closed and unguarded, and it does not appear that the tourism revenue has been spent addressing vandalism or any other legitimate use.

38. NOAC is religious nonprofit unlawfully demanding the public pay fixed fees to enter a public religious cemetery and listen to a tour approved by NOAC. However, ACTGC can legally collect $2.00 from every paying tour guest and allocate the funds to (a) coordinating the tours, (b) securing the cemeteries, and (c) restoration by experts, such as Save Our Cemeteries. And the public will once again have free and reasonable access all public cemeteries.

## REQUEST FOR TEMPORARY RESTRAINING ORDER

39. ACTGC asks the court to, after considering the complaint and motion, to issue a temporary restraining order against NOAC prohibiting NOAC from (a) treating any of its

religious cemeteries as privately owned cemeteries and (b) reopening any of its cemeteries to only a single or small group of cemetery tourism industry participants.

## REQUEST FOR PRELIMINARY INJUNCTION

40. ACTGC asks the court to set its application for preliminary injunction for hearing at the earliest possible time and, after hearing the request, to issue a preliminary injunction prohibiting NOAC from (a) treating any of its religious cemeteries as privately owned cemeteries and (b) reopening any of its cemeteries to only a single or small group of cemetery tourism industry participants.

## REQUEST FOR PERMANENT INJUNCTION

41. ACTGC asks the court to set its application for injunctive relief for a full trial on the issues in this application and, after the trial, to issue a permanent injunction prohibiting NOAC from (a) treating any of its religious cemeteries as privately owned cemeteries and (b) unreasonably keeping any of its cemeteries closed, (c) requiring mandatory entry fees or tours, (d) refusing entry to any New Orleans licensed cemetery tourism industry participants.

## PRAYER FOR RELIEF

Wherefore, ACTGC respectfully requests the following relief:

42. An order declaring that the defendants schemed to fix prices and establish a monopoly in violation of 15 U.S.C. §1 *et seq.* and La. R.S. §51:122 and 123;

43. An order declaring that NOAC is in breach of its obligation to provide free and reasonable access to its public cemeteries, including St. Louis Cemeteries Nos. 1 and 2;

44. An order preliminarily and then permanently enjoining defendants and their owners, members, officers, agents, affiliates, subsidiaries, servants, employees, contractors, and all other persons or entities in active concert or privity or participation with them, from taking retaliatory action against ACTGC and their owners, owners, members, officers, agents, affiliates, subsidiaries, servants, employees, and contractors for bringing this lawsuit;

45. An order directing defendants to take affirmative steps necessary to remediate their past restraints to commerce and to once again allow the public free and reasonable access to the public cemeteries owned by NOAC;

46. An award to ACTGC of reasonable attorneys' fees and costs incurred in connection with this action from defendants;

47. Retain jurisdiction of this matter to enforce the terms of the Court's orders; and

48. An order granting such further and different relief as this Court may deem just and proper or that is necessary to make ACTGC whole.

Dated: November 15, 2021        DAVID W. NANCE LAW FIRM LLC

                                        /s/ David W. Nance
                                By: _____

                                David W. Nance (La. Bar #25467)
                                DAVID W. NANCE LAW FIRM, LLC
                                3912 Constance Street
                                New Orleans, Louisiana 70115
                                (504) 450-3938 direct
                                (504) 355-1669 fax
                                david@dwnlaw.com

                                COUNSEL FOR PLAINTIFF

CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2021, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system and mailed by United States Postal Service on any nonparticipating parties or their counsel of record.

/s/ David W. Nance
By: _____

David W. Nance (La. Bar #25467)
DAVID W. NANCE LAW FIRM, LLC
3912 Constance Street
New Orleans, Louisiana 70115
(504) 450-3938 direct
(504) 355-1669 fax
david@dwnlaw.com

<u>VERIFICATION</u>

STATE OF LOUISIANA

PARISH OF ORLEANS

Before me, the undersigned authority, personally came and appeared: **Jordan Hobson** who, having been duly sworn, deposed and stated to me, Notary, that Jordan Hobson is the interim manager of plaintiff, Association of Cemetery Tour Guides and Companies L3C d.b.a. New Orleans Association of Cemetery Tour Guides and Companies, in the first amended complaint attached hereto and all the allegations of facts and circumstances contained therein are true and correct to plaintiff's best knowledge, information and belief.

ASSOCIATION OF CEMETERY TOUR GUIDES AND COMPANIES L3

BY: _____
JORDAN HOBSON, Interim Manager

SWORN TO AND SUBSCRIBED BEFORE ME THIS 15TH DAY OF NOVEMBER 2021.

_____
NOTARY PUBLIC

DAVID W. NANCE
NOTARY PUBLIC
LA. BAR ROLL #25467
NOTARY NO. 82639
STATE OF LOUISIANA
My Commission Is
For Life