UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WITCHES BREW TOURS LLC, § <br> Plaintiff, § <br> § <br> v. § <br> § <br> NEW ORLEANS ARCHDIOCESAN § <br> CEMETERIES d.b.a. NEW ORLEANS § <br> CATHOLIC CEMETERIES and § <br> CEMETERY TOURS NOLA, LLC, § <br> Defendants. § | Case No. 2:21-cv-02051-BWA-MBN <br> (Antitrust) <br> <br> COMPLAINT FOR <br> INJUNCTIVE RELIEF |

PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR REVIEW OF ORDER

The plaintiff ("ACTGC") concedes that the original motion for leave to amend [R. Doc. 67] did not address any reasons, other than those addressed in the affidavits [R. Doc. 67-1] ("Affidavits") themselves, for the motion. The reason is simple. Undersigned counsel was hours away from a trip out of the country and, frankly, had difficulty imagining any argument for not allowing the Affidavits to be entered into the record. Therefore, ACTGC now reurges its argument contained in its reply [R. Doc. 76] and supplements that argument below.

The court and parties are aware of the relevant law and relevant facts. Therefore, ACTGC will limit this memorandum to additional argument focused primarily on error in the Order [R. Doc. 77].

1. <u>No Undue Delay</u>[1]

There was no undue delay in filing the Affidavits. It was not reasonable to expect tour

---

[1] R. Doc. 77, 2:3-14.

guides to come forward due to their fears of retaliation, the most obvious of which being Defendants' refusal, while they control up to 90% of the city's cemetery tour business, to hire a tour guide who had participated in this litigation or testified against them.

The first amendment to the complaint was to substitute in an association as ACTGC because of the association members' fears of retaliation by defendants powerful enough to seize land dedicated to the public in order to set up a monopoly over up to 90% of the markets. The court and opposing counsel may find it difficult to imagine a reasonable risk of retaliation against ACTGC members. However, to persuade tour guides to risk even membership in the association, despite them having lost all of their income and even their entire businesses, undersigned counsel had to assure the tour guides in person that their identity as members is protected by the United States Constitution and that he would go to jail rather than release their identities as long as the current precedent stood. Undersigned counsel has invested 122 hours to date in this matter. Most of that time will not be compensated if ACTGC is unsuccessful, and no amount of money could induce undersigned counsel to spend even minute in jail.

Every complaint has sought protection for the association's members, and that relief has been denied to date. Furthermore, every complaint has been verified; the association's complaints are verified by its Interim Manager, who has reviewed the members list and all of the members' responses to the association's online surveys. ACTGC conducted two member surveys during early registration in 2021, one begun on November 10, 2021 ("First Survey"),[2] and later replaced with the second begun November 14, 2021 ("Second Survey").[3] The links below provide data from the association's members relevant to this litigation. The Defendants have never attempted to

---

[2] https://www.surveymonkey.com/stories/SM-YZ9ZSRLW/.
[3] https://www.surveymonkey.com/stories/SM-NT6TNRLW/.

controvert, or even address, any of that data. The Defendants have only complained that the members' have not come forward, while challenging the members' need for protection.

The Affidavits were only recently obtained when some tour guides, being informed about the course of this litigation, decided to assume the risk of retaliation; some are better positioned to bear that burden. The Defendants sought to strike these same affidavits, as an improper attempt to supplement the record on appeal, when they were attached to ACTGC's motion for injunctive relief pending appeal. At that time, ACTGC responded, in pertinent part, as follows:

> "ACTGC has not sought to supplement the record on appeal, to date. ACTGC filed a motion for injunction pending appeal with accompanying affidavits.[4] The affidavits are authorized by Fed. R. App. P. 27(a)(1) and (2) and **were obtained only shortly before ACTGC filed its motion. The affiants were persuaded to assume the risk of retaliation,[5] which ACTGC has now three times sought to address in its requests for injunctive relief,[6] to avoid ACTGC being deprived of its day in court** because of contested procedural decisions setting an inappropriate standard of proof for injunctive relief.[7] The defendants continually,[8] and even the district court,[9] inappropriately reference the identities of ACTGC's members.
> Despite NOAC's assertion that the affidavits are by ACTGC members,[10] the affiants have not been identified as members of ACTGC due to reasonable concerns about retaliation against anyone challenging defendants influential enough for the city and state to allow them to forcibly privatize, for profit, Despite NOAC's assertion that the affidavits are by ACTGC members,[11] the affiants have not been identified as members of ACTGC due to reasonable concerns about retaliation against anyone challenging defendants influential enough for the city and state to allow them to forcibly privatize, for profit, centuries-old real rights belonging to the public.[12] Of course, the City of New Orleans is watching this

---

[4] Case: 22-30091, Doc. 00516308424, ACTGC Mot for Inj.
[5] Case: 22-30091, Doc. 00516276165, ACTGC Appellant Brief, 20:3-4, 33:3-11.
[6] ROA.16:17-17:2, 72:1-5, 308:2-7; Doc. 00516276165, ACTGC Appellant Brief, 47:4-7; and Doc. 00516308424, ACTGC Mot for Inj., 322-5.
Case: 22-30091, 00516276165, ACTGC Appellant Brief, 30:4-40:6.
[8] Case: 22-30091, Doc. 00516321149, NOAC Mot. to Strike, 10:6-11; ROA.193:19-194:2, 215:19-216:2.
[9] ROA.260:17 (n. 17), 264:6 (n. 43), 267:12-13.
[10] Case: 22-30091, Doc. 00516321149, NOAC Mot. to Strike, 10:17-18.
[11] Case: 22-30091, Doc. 00516321149, NOAC Mot. to Strike, 10:17-18.
[12] Case: 22-30091, Doc. 00516276165, ACTGC Appellant Brief, 33:3-11.

> litigation to see if it also will be allowed to force the public to pay to visit all of the city's public cemeteries.[13]
>
> The affiants are self-identified as city-licensed tour guides, people affiliated with city-licensed tour companies, people with friends or relations (only some of whom are acknowledged by NOAC) interred in Nos. 1 or 2,[14] and generally as members of the public with a specific interest giving rise to standing to bring a possessory action on behalf of the public.[15]" [16]

The only way ACTGC could have justified obtaining the Affidavits earlier is if the tour guides saw the City of New Orleans or the State of Louisiana or the courts protect their interests and them. They have not.

    2. <u>No Three Failed Attempts</u>[17]

ACTGC has not made three failed attempts to cure a deficiency.[18] Every complaint has verified, the two amend on behalf of all ACTGC members, currently 76. Each complaint contains sufficient evidence for injunctive relief. ACTGC seeks to amend to add the Affidavits because they address the Defendants' repeated assertion that more is needed because no one should believe that a tour guide could be put out of business by losing access to the public cemetery receiving up to 90% of the city's cemetery tourism business.

The Order takes the inaccurate position that ACTGC's live complaint is procedurally deficient; the facts and substantive law have not been addressed by a court to date. Inaccurate because the Defendants' latest motion to dismiss is still pending and is founded on a disfavored

---

[13] See identification of the City of New Orleans as an interested person, pp. iv-vi above.
[14] Case: 22-30091, Doc. 00516308425, ACTGC Mot. Supp. Doc., 1-77.
[15] Case: 22-30091, Doc. 00516276165, ACTGC Appellant Brief, 22:6-23:2; referencing ROA.98:13-20, 183:3-15, and 283:9-18.
[16] Case: 22-30091, Doc. 00516328023, ACTGC Response to Defendants' Motion to Strike, 12:2-13:8 (emphasis added).
[17] R. Doc. 77, 2:12-14.
[18] R. Doc. 77, 2:14.

4

argument that is contradicted by the Defendants' own argument in their first motion to dismiss, which conceded ACTGC's cause of action but challenged standing by challenging the Court's jurisdiction. ACTGC's second amended complaint [R. Doc. 42] contains extensive evidence of a nexus between cemetery tourism in New Orleans and interstate commerce, as well as many other relevant facts in this case, because it is time to finally see the Defendants' answers.  Every false factual assertion in an answer or discovery response will incur the risk of sanction, unlike the Defendants' dilatory procedural filings apparently founded on the expectation that they will never have to confront the actual facts or substantive law.

ACTGC asserts that the original complaint was sufficient to justify a temporary restraining order, an accomplishment in itself considering the obscurity of cemetery law. The first amendment to the complaint was to substitute in an association as plaintiff for the reasons discussed above. The second amendment was in response to the Court's finding that the complaint contained no supporting evidence of the nexus of tourism in New Orleans to interstate commerce, to defeat 12(b)(1) challenge. The third amendment is to add recently acquired affidavits from tour guides, only recently persuaded to come forward, who are adversely affected by the defendants' actions. Each amendment serves a different purpose.

### 3. No Prejudice to Either Defendant[19]

There is no prejudice to the Defendants, much less manifest prejudice,[20] by allowing the Affidavits to be added to the record. Neither Defendant has even filed an answer yet, much less commenced discovery. This litigation has been focused since its inception on the Defendants'

---

[19] R. Doc. 77, 2:15.
[20] R. Doc. 77, 2:15.

procedural motions, the sole purpose of which is to avoid having to address the facts and substantive law by filing an answer and commencing discovery. The Defendants have not successfully controverted, only having tried once, any of ACTGC's allegations of material fact and only brought specious substantive law defenses ignoring the law regarding dedication of land to the public, centuries of custom created by the Roman Catholic Church, etc. NOAC can make a plausible argument that conducting a cemetery tour might be a new aspect of conducting a cemetery business, but unless the Louisiana Legislature enacts new legislation, NOAC will never have more than a specious legal defense for seizing land dedicated to the public to create a monopoly over up to 90% of the city's cemetery tour market. For example, the Defendants and the Order[21] assert that the loss of one's entire business and income to support and house one's family can be fairly compensated for in the future, the public can be protected from antitrust violations by future compensation to a select few members of the public, the city's cemetery tour guides are not excluded from up to 90% of the city's market because they and their guests can all pay the Defendants to take their tour. These assertions are facially inane and deeply offensive to the New Orleans licensed tour guides who have lost their businesses and been forced to change their profession to feed and house their families.

    4. No Serial Requests for Injunctive Relief[22]

The plaintiff in this action has sought a temporary restraining order once, and a preliminary injunction once from the Court. The denial of the latter is currently pending appeal, where ACTGC sought one preliminary injunction pending appeal. Considering that the only relief ACTGC seeks in this litigation is injunctive, ACTGC's actions are neither unreasonable nor are they serial in any

---

[21] R. Doc. 77, 2:28-31.
[22] R. Doc. 77, 2:16.

possible way, much less in any possible derogatory denotation or connotation. ACTGC members seek to enforce substantive laws that have never been address after more than six months of litigation.

5. <u>Not Futile</u>[23]

Contrary to the assertions of the Defendants and the Order, the Affidavits do demonstrate irreparable harm and that ACTGC members cannot give tours at St. Louis Cemeteries Nos. 1 and 2. Ms. Tomlinson avers that she has "been a tour guide for 7 years and been doing cemetery tours in St. Louis Cemetery No. 1 the entire time as well as gate days for multiple companies."[24] This means she has worked those seven years exclusively giving tours at St. Louis Cemetery No. 1. She goes on to aver that "NOAC has taken a very significant portion of my income from me by forcing me to shut down completely a cemetery tour company I had recently purchased from the retiring owners and which focused exclusively on Nos. 1 and 2."[25] She expressly avers that "NOAC stopped me from operating my recently purchased business and forced it to close. So , I've lost all my revenue, from both my own company and from other companies for which I could have worked."[26] Two of these three quotes are underlined in her affidavit, but the Defendants and the Order still managed to miss them.

Ms. Dupont similarly avers that she lost all of her day income due to the Defendants' exclusion of all competing tour guides from St. Louis Cemetery Nos. 1 making it very difficult to house and feed her family.[27] She has also lost the ability to visit her ancestors graves in St. Louis

---

[23] R. Doc. 77, 2:20-35.
[24] R. Doc. 67-1, 6:7-9.
[25] R. Doc. 67-1, 6:9-7:1.
[26] R. Doc. 67-1, 7:9-12.
[27] R. Doc. 67-1, 10:7-11.

Cemeteries Nos. 1 and 2 because NOAC has deigned to decide who is closely enough related to visit their ancestors' grave in public cemeteries.[28] She further avers that her exclusion from these cemeteries has devastated her income and her emotional health,[29] which also can not be fairly compensated in the future.

Other affidavits include photographic evidence of continuing vandalism at St. Louis No. 1, which has occurred after the live complaint [R. Doc. 42] was filed. There is no proper basis for not allowing ACTGC to add the Affidavits to the record, and further delay in there admission only further delays ACTGC in its intention to seek to supplement the record on appeal with them and the full transcript from the only in-person hearing in this litigation.

For the above-discussed reasons, ACTGC's motion for review of the Order should be granted and the affidavits [R. Doc. 67-1] should be permitted into the record as either an amendment or supplement to the live complaint [R. Doc. 42].

Dated: June 29, 2022          DAVID W. NANCE LAW FIRM LLC

                                      /s/ David W. Nance
                              By: _____

                              David W. Nance (La. Bar #25467)
                              DAVID W. NANCE LAW FIRM, LLC

---

[28] R. Doc. 67-1, 11:7-15.
[29] R. Doc. 67-1, 11:16-19.

        3912 Constance Street
        New Orleans, Louisiana 70115
        (504) 450-3938 direct
        (504) 355-1669 fax
        david@dwnlaw.com

        COUNSEL FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of January 2022, I electronically filed the foregoing with the Clerk of Court, by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By:    /s/ David W. Nance
        _____
        DAVID W. NANCE